**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RUSSELL ORTIZ,

      Plaintiff,

v.                                                            No. CV-14-993 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Russell Ortiz's *Motion to Reverse or Remand the Administrative Decision* and *Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision* (the "Motion"), filed on March 9, 2015, (Docs. 15 & 16); Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand* ("Response"), filed on August 21, 2015, (Doc. 26); and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reverse/Remand* ("Reply"), filed on September 16, 2015. (Doc. 27).

Mr. Ortiz filed an application for disability insurance benefits and supplemental security income with the Social Security Administration on August 31, 2011 and September 15, 2011, respectively, alleging that his disabling condition began alternatively on both December 31, 2010 and August 9, 2008. (Administrative Record ("AR") 10, 156–64). His applications were denied on November 18, 2011 (AR 63–64), and upon reconsideration on February 6, 2012. (AR 102–08). Mr. Ortiz filed his request for a hearing on February 10, 2012, (AR 109–10); a hearing was held on June 4, 2013, before Administrative Law Judge ("ALJ") Ann Farris. (AR 21–61). Mr. Ortiz and Judith Beard, an impartial vocational expert, testified at the hearing. *Id.*

The ALJ issued her opinion on July 1, 2013, and determined that Mr. Ortiz was not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR 10–20). Mr. Ortiz filed an application for review with the Appeals Council, which was summarily denied on October 8, 2014, (AR 1–5), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Ortiz complains that the ALJ committed reversible, legal error by: (i) failing to properly evaluate the evidence of his severe mental impairments at step three of the sequential evaluation process; (ii) failing to properly weigh certain opinions in the record; (iii) allowing Ms. Beard to testify at the hearing; and (iv) making findings at step five of the sequential evaluation process unsupported by evidence and contrary to the law.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to consider all of the significantly probative evidence of Mr. Ortiz's mental impairments, the Court finds that the Motion shall be **GRANTED** and the case shall be **REMANDED** for further proceedings.

I. Standard of Review

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's

findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv),

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, in light of his residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

### III. Background

Mr. Ortiz applied for benefits alleging that he was disabled due to a heart condition, pulmonary adema, depression, anxiety, heart disease, shortness of breath, anxiety, cognitive issues, and a hearing condition. (AR 187).

At step one, the ALJ determined that Mr. Ortiz had not engaged in substantial gainful activity since December 31, 2010. (AR 12). At step two, the ALJ concluded that Mr. Ortiz was severely impaired with obesity, cardiomyopathy with pacemaker implant, posttraumatic stress disorder ("PTSD"), mood disorder, alcohol dependence, and "left meniscus tear status post repair." (AR 12–13). At step three, the ALJ concluded that none of Mr. Ortiz's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926. (AR 13–15).

The ALJ proceeded to step four, and first made an RFC finding that Mr. Ortiz could perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he: (i) cannot kneel, crouch or crawl; (ii) must avoid exposure to hazardous conditions including unprotected heights and dangerous moving machinery; (iii) can perform simple, routine tasks; and (iv) can have only occasional interaction with the

public. (AR 15–18). The ALJ decided that Mr. Ortiz was precluded from doing any of his past relevant work in light of the RFC finding. (AR 19).

At step five, the ALJ inquired whether Mr. Ortiz would be able to perform any other work existing in significant numbers in the national economy. (AR 19). The ALJ noted that Mr. Ortiz was 37 years old on the alleged disability onset date and classified as a "younger individual" in accordance with the Regulations. (*Id.*). The ALJ also determined that Mr. Ortiz had a limited education and English-language skills. (*Id.*).

The vocational expert testified at the hearing that an individual with Mr. Ortiz's same age, education, work experience, and RFC could perform the jobs of document preparer, jewelry preparer, and touch-up screener. (AR 54). The vocational expert stated that those jobs existed in significant numbers in the national economy. (*Id.*). After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 20).

The ALJ concluded that because Mr. Ortiz was capable of performing work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 20).

   **IV. Analysis**

Mr. Ortiz complains that the ALJ committed reversible, legal error by failing to properly evaluate the significantly probative evidence of his severe mental impairments at step three, and weigh certain opinions in the record in making her RFC determination. He also claims that Ms. Beard should not have been permitted to testify at the hearing, and that the ALJ made findings at step five unsupported by evidence and contrary to law.

The Commissioner responds that all of the ALJ's findings are supported by substantial evidence and not legally erroneous. She contends that any alleged error at step three was harmless because of the ALJ's analysis of the probative medical evidence at step four. The Commissioner also argues that the vocational expert's testimony supports the ultimate finding of disability, and asks the Court to affirm the final decision denying disability benefits.

### A. Alleged Errors at Step Three and Step Four

Mr. Ortiz asserts that the ALJ committed legal error by failing to properly discuss and analyze the evidence of his severe mental impairments at step three. (Doc. 16 at 9–11). Specifically, Mr. Ortiz argues that the ALJ did not provide adequate reasons supported by substantial evidence as to why his impairments did not satisfy the "Paragraph B" criteria for mental impairments under §§ 12.04 (affective disorders) and 12.06 (anxiety-related disorders) of the Listings. The Commissioner contends that the ALJ properly discussed the effects of Mr. Ortiz's mental impairments, and that Mr. Ortiz did not meet his burden of proving that his impairments resulted in a limitation that met or equaled the criteria in the Listings. (Doc. 26 at 8–9).

1. <u>ALJ's Responsibility to Identify Relevant Impairments under the Listings</u>

At step three of the sequential evaluation process, the ALJ must determine whether the impairments found to be severe at step two meet or equal a listed impairment; if so then the claimant qualifies for disability benefits. *See Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If a claimant has one or more impairments, the Commissioner must

determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. §§ 404.1526(b) and 416.926(b).

A claimant arguing that the ALJ failed to make the appropriate analysis under the Listings must show he can satisfy the basic requirements of one of those Listings. Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) consist of a statement describing the disorder, the "Paragraph A" criteria, which is a set of medical findings, and "Paragraph B" criteria, a set of impairment-related functional limitations. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. A claimant will be found to satisfy a listing "if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B" are satisfied. *Id.* Here there is no dispute that Mr. Ortiz satisfied the diagnostic description and the criteria of Paragraph A.

At step three, the ALJ found that Mr. Ortiz's severe mental impairments of PTSD, mood disorder, and alcohol abuse did not alone or together meet or medically equal the severity of listings 12.04 and 12.06. (AR 14–15). The ALJ noted that to satisfy the "paragraph B" criteria for those listings, the claimant must have mental impairments that result in at least two of the following: (i) marked restriction of activities of daily living; (ii) marked restriction in maintaining social functioning; (iii) marked restriction in maintaining concentration, persistence, or pace; and (iv) repeated episodes of decompensation, each for extended duration. (*Id.*).

The ALJ found that Mr. Ortiz has only mild restriction in activities of daily living, and moderate difficulties in social functioning and concentration, persistence, or pace. (AR 14). In making those findings, the ALJ relied solely on the Function Report completed by Mr. Ortiz on October 13, 2011, and observed that Mr. Ortiz stated that he

performs household chores, is able to drive, go shopping, and pay bills. (AR 211). Mr. Ortiz also reported he does not spent time with others, needs to be reminded to go places and be accompanied, does not have a social life, has problems getting along with others, and does not like being around others. (AR 212–13). Mr. Ortiz reported that he can only pay attention for five minutes at a time, does not finish projects that he starts, and does not follow written or spoken instructions well. (AR 213). Last, the ALJ observed that Mr. Ortiz has experienced no episodes of decompensation which have been of extended duration. (AR 15). Thus, because the "Paragraph B" criteria were not satisfied, the ALJ concluded that Mr. Ortiz did not satisfy listing 12.04 or 12.06. (*Id.*).

2. *Evidence from Charlotte Conn, L.I.S.W.*

Mr. Ortiz argues that the ALJ erred by not considering the medical opinion of his treating therapist, Charlotte Conn, L.I.S.W., in her analysis of the "Paragraph B" evidence at step three. (Doc. 16 at 9–11). On November 2, 2011, Ms. Conn completed a questionnaire and Mental Residual Functioning Capacity Assessment concerning Mr. Ortiz. (AR 488–94). She explained that she had been treating Mr. Ortiz and his children for family therapy bi-weekly and occasionally weekly since March 9, 2011 and that Mr. Ortiz suffered from major depression. (AR 490). In the areas of daily living and social functioning, Ms. Conn found that Mr. Ortiz had marked impairments. (AR 492). She opined that he had "extreme" deficiencies in concentration, persistence, or pace, and had experienced four or more episodes of deterioration or decompensation in work or work-like settings. (*Id.*). Last, she explained that these conditions will be an "ongoing challenge for Mr. Ortiz." (*Id.*).

The ALJ must explain why a claimant does or does not meet a listing by making findings supported by specific weighing of the evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) (explaining that under 42 U.S.C. 405(b)(1) an ALJ is required to discuss the evidence and explain why a claimant is not disabled at step three). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010 (quotations omitted); *see also Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position."). However, an ALJ's *Clifton* error is harmless if she made findings elsewhere in her decision that conclusively negate the claimant's argument that he is disabled under a listing at step three. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

It is undisputed that the ALJ did not consider Ms. Conn's opinion at step three of her decision. Rather, the Commissioner responds that because the ALJ discussed and discounted Ms. Conn's opinion when she assessed Mr. Ortiz's RFC, that any error at step three was harmless. (Doc. 26 at 9). The Commissioner points out that in making her RFC finding at step four, the ALJ afforded Ms. Conn's opinion "little or no weight." (AR 18). Indeed, the ALJ noted that because Ms. Conn was not an "acceptable medical source" and her conclusions were unsupported by treatment records, her opinion merited little to no weight. (*Id.*).

While the Commissioner argues that it was proper for the ALJ to discount Ms. Conn's opinion for these reasons, Mr. Ortiz maintains that the analysis of Ms. Conn's

opinion at step four amounts to a second legal error. Therefore, Mr. Ortiz asserts, the ALJ's consideration of Ms. Conn's opinion at step four does not excuse the ALJ's error at step three.

3. *Consideration of Ms. Conn's Opinion at Step Four*

Mr. Ortiz also contends that the ALJ committed error by formulating an RFC determination unsupported by the law because the ALJ failed to properly evaluate his functioning limitations caused by his mental impairments. Specifically, Mr. Ortiz argues that the ALJ improperly weighed and rejected the opinion of Ms. Conn at step four. The Commissioner responds that the ALJ appropriately evaluated Ms. Conn's opinion in formulating the RFC, and that the Court should not now reweigh the evidence.

The ALJ considered Ms. Conn's opinion and gave it little to no weight for the reasons that Ms. Conn is not an acceptable medical source and her conclusions are unsupported by treatment records. (AR 18). Mr. Ortiz argues that the ALJ impermissibly rejected Ms. Conn's opinion because the ALJ failed to properly evaluate them pursuant to the Regulations.

The RFC is based on all relevant evidence in the record, including information about the individual's symptoms, reports of daily activities, lay evidence, medical history, medical signs and laboratory findings, and any medical source statements submitted by a treating or other acceptable medical source. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *5, 7 (July 2, 1996). The ALJ also takes into account any statements about what the claimant can still do that have been provided by medical and other sources, whether or not they are based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513, 416.913. Additional evidence from medical sources that are not

"acceptable medical sources," and information from nonmedical sources, may also be used to evaluate the severity and functional effects of a claimant's impairments. SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006).

Opinions from non-acceptable medical sources, such as social workers, are important in determining the severity and limiting effects of a properly-diagnosed condition. SSR 06-03p, 2006 WL 2329939, at *2. When considering what weight, if any, to afford a medical opinion or other evidence from such a source, the ALJ should consider the same six factors typically used to evaluate the weight of an acceptable medical source's opinion. *Id.* at *4. These factors include: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship; (iii) supportability of the opinion by reference to relevant evidence; (iv) how well the source explains the opinion; (v) the source's medical specialization; and (vi) any other factor which tends to support or refute the opinion. 20 C.F.R. §§ 404.1527(c) and 416.927(c); SSR 06-03p, 2006 WL 2329939 at *3–4.

The ALJ should explain the weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. SSR 06-03p, 2006 WL 2329939, at *6; *see also Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008). This duty is commensurate with the ALJ's more generalized duty to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010.

The Court therefore agrees with Mr. Ortiz's argument that the ALJ should have weighed Ms. Conn's opinion in consideration of the six factors described above. It was

not proper to reject her opinion outright for the sole reason that Ms. Conn was not an "acceptable medical source." The Court will now turn to whether the second reason cited by the ALJ for rejecting Ms. Conn's opinion, that it was unsupported by treatment records, was a proper basis for doing so.

The Commissioner argues that Ms. Conn's opinion lacked evidentiary support for the limitations that she assessed, and the ALJ appropriately and implicitly relied on the factors above in discounting the opinion. (*Id.*). A review of the record shows that it does not contain any treating notes of Mr. Ortiz by Ms. Conn. However, Ms. Conn wrote a letter to the Commissioner on January 4, 2012 explaining the basis for her November 2, 2011 opinion. She stated that she could not submit her treatment notes to the Commissioner because those documents contain information relating to his children and family issues, and not only to Mr. Ortiz. (AR 541). She explained that she "had a significant number of sessions" with Mr. Ortiz to work on his depression and anxiety, and that based on her clinical observations she determined that Mr. Ortiz has significant symptoms in relation to his depression diagnosis. (*Id.*). She also stated that his symptoms have a significant impact on his daily functioning and that he needs significant support with addressing his depression in order to manage the stressors of life. (*Id.*). She noted that he struggles to solve everyday problems due to troubles concentrating and processing information and that he has significant anxiety due to worry associated with his difficulty functioning. (*Id.*). She welcomed the Commissioner to contact her further with questions. (*Id.*).

The ALJ did not address Ms. Conn's letter and explanation when she rejected Ms. Conn's opinion. Further, there is nothing in the record to suggest that Ms. Conn was

ever re-contacted regarding the dearth of treatment notes, despite the ALJ's duty to develop the record "by obtaining pertinent, available medical records which come to [her] attention." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996).

The Commissioner also contends that the ALJ considered and discounted Ms. Conn's opinion because it amounted to a "check-the-box" medical source statement that did not provide specific clinical or laboratory findings sufficient to support her opinion. (Doc. 26 at 10). The ALJ did not state that she was discounting Ms. Conn's opinion because she filled out a "check-the-box" form. The Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in post hoc rationalization. *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004). Therefore, the Court will not consider the reasons provided by the Commissioner evaluating the ALJ's decision.

In sum, the ALJ gave only two reasons for rejecting Ms. Conn's opinion—that Ms. Conn is an unacceptable medical source and her opinion was unsupported by the treatment records. As explained above, the first reason is not a permissible reason for discounting the opinion. The second reason is erroneous and unsupported because the ALJ failed to adequately explain and consider the reason why Ms. Conn's treatment notes were not submitted into the record, or what steps the ALJ took to obtain them.

The ALJ's failure to provide a substantiated reason for rejecting Ms. Conn's opinion constitutes reversible error since the record is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The Court is left with no guide by which to assess the ALJ's decision to reject

Ms. Conn's opinion. This error was neither harmless nor of minor importance in light of the fact that Ms. Conn is a treating mental health care professional who provided a far more constraining picture of Mr. Ortiz's abilities than that assessed by the ALJ. In the context of analyzing objective evidence, Tenth Circuit precedents "allow the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). However, that is not the case here, and thus the need for express analysis of Ms. Conn's opinion is required.

The ALJ failed to discuss the significantly probative evidence from Ms. Conn at step three of the sequential evaluation process, and the ALJ's discussion of Ms. Conn's opinion at step four is insufficient to supply the analysis missing from the step-three discussion. *See Carpenter*, 537 F.3d at 1270. The ALJ was required to consider Ms. Conn's opinion in light of the other record evidence and the factors set out in the Regulations, which the ALJ did not do. *Id.* The ALJ failed to adequately discuss the evidence and tie her conclusions to the evidence, and therefore her finding that Mr. Ortiz does not meet or equal listings 12.04 and 12.06 is based on legal error and must be remanded.

### V. Conclusion

The ALJ's analysis of Mr. Ortiz's mental impairments at steps three and four was erroneous and unsupported by substantial evidence, and therefore the Court will remand the case to the Commissioner for further administrative proceedings consistent with the discussion herein. The Court does not decide any other issue raised by Mr.

Ortiz on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Mr. Ortiz's *Motion to Reverse or Remand the Administrative Decision* (Doc. 15) be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE